Ms. Parrish, when you are prepared, please proceed. May it please the court, Judge Wollman, first of all, it's an honor to appear before you for your last oral argument. Thank you. I appreciate the opportunity. Counsel, you may want to lower the podium a little bit. It's there on the right. I think we'll get the mic a little... Thank you, Judge. There you go. That's better. We can hear you. My name is Kay Parrish and I'm the CJA appointed counsel on behalf of Mr. Bruce Alexander. Your Honors, Bruce Alexander knew nothing about the drugs that were found in that vehicle. That's not me telling you that. That's a statement that was made by his co-defendant to a police officer spontaneously at the scene of the crime. When he made that statement, Mr. Gay and Mr. Alexander had been pulled over and five kilograms of fentanyl had been found. There were, at that time, two suspects, Mr. Alexander and Mr. Gay. In saying that Mr. Alexander knew nothing about those drugs, Mr. Gay was implicitly saying, I did. He acknowledged his own knowledge of the crime and not only exculpated Mr. Alexander, but he inculpated himself and thereby also gave up any opportunity for a defense he might have had in potentially saying that Mr. Alexander was the culprit. He made that statement then. That statement, per Williamson, must be understood in that context of those particular facts. A few hours later, when he was being interrogated by police officers and he had decided to admit his own involvement and start naming names as to other people who had been involved in this conspiracy to distribute fentanyl, he again reiterated to police officers, Mr. Alexander knew nothing about the drugs that were found in that car. At that point, he was trying to curry favor with police officers. He was doing so by naming names, but the record is very clear that he curried no favor from police officers or prosecutors by saying a statement that exculpated his co-defendant. The statement was corroborated again a third time at the time that Mr. Gay pled guilty in an open plea before the court. In the statement of facts for that plea, he did not name Mr. Alexander. He simply admitted that he was in a conspiracy with others. The court found that that was sufficient to support his guilty plea. Now, as this court is well aware, under 804 D3, there are three requirements that the court must find in order for a statement of interest to be admissible. First, that the witness is unavailable. There's no issue there. Everybody agrees in this case that Mr. Gay was unavailable. Second, that the statement was actually against his interest, that it was so tending to subject the person to criminal liability that a reasonable person wouldn't have made it were they not believe it was true. I've addressed that very briefly. I'm going to address that later. But the first thing I want to talk about, Your Honor, is actually the third requirement, which is the corroborating circumstances. And the reason I want to address this first today is because, frankly, in my briefing, I think there's something I did not make clear enough that I should have made clearer. The requirement for corroborating circumstances needs to be read in the context of the purpose of the rule. Now that's an important point here, because when the statements at issue are inculpatory for the defendant, the requirement of corroborating circumstances comes from a different place than when the statement at issue is exculpatory. When the statement is exculpatory, the requirement of corroborating circumstances is right there in the language of 804 D3. It says that if the statement is being offered as an exculpatory statement in order to essentially exonerate the defendant, that there need to be sufficient corroborating circumstances. With regard to inculpatory statements, that's not in the rule. Courts have read that requirement into the rule, because essentially to protect, assure kind of an addition of reliability to the statement itself, and to assure that a defendant's confrontation clause rights are protected. Now this distinction is very important when looking at the purpose of the corroborating circumstances, because the committee notes, and Your Honor, I think this is well articulated in the Fifth Circuit case that we discussed, the Bagley case. It discusses the committee notes and the legislative history of that corroborating circumstances. What is the corroborating evidence here to give some credibility to Gay's statement? Sure. And Your Honor, I think... It would retract from his credibility that he absconded. Yes, it would, Your Honor. And let me say a couple of... Let me first say that when looking at corroborating circumstances, the primary thing that we're looking at in the context of an exculpatory statement is the question, not of its credibility, but the question of whether the statement was made. And if you look at the Goodloe case in this circuit, it discusses that as well, that when we're talking in the context of an exculpatory statement, and I believe Goodloe is actually the only case from this circuit where it's discussing it in the context of an exculpatory statement, the corroborating circumstances requirement in the context of an exculpatory statement. So looking at the corroborating circumstances, first of all, there is no doubt in this case that the statement was made. It was made to a police officer. Both statements were made to a police officer. They were twice made to a police officer. A police officer was the witness. No one in this case questioned whether that statement was made. So to the extent, which I think is the large issue of the corroborating circumstances that we're looking at, was the statement made, which I think the Goodloe case and those cases from the Fifth Circuit suggest is actually the purpose of the corroborating circumstances requirement. They're there. Nobody questions in this case that the statement was made. It's not like we're talking about in the Bagley case, for example. It was talking about a couple of guys in prison, one of them died, and suddenly this other guy emerges saying, oh yeah, that guy who died, the police said he was responsible for the crime. That was the kind of thing that the corroborating circumstances requirement was trying to prevent in the context of exculpatory statements. That being said, Your Honor, I think there are significant corroborating circumstances. But that's not, the rule 804b3 says it's against the declarant's interest and supported by corroborating circumstances indicating the statement's trustworthiness. Right. So that's what we need to focus on, isn't it? On corroborating circumstances? Your Honor, I think the language of the rule is a little bit vague there as to what statement we're talking about, right? Whether we're talking about the statement of the declarant or the statement of the witness. What the Fifth Circuit found, and also what this court focused on in good law, was that if you look at the legislative history and why that language was required, that the primary thing they were looking at was the question of whether the statement was made. Now there is some concern with the truthfulness of the statement itself, right? And a couple of things to remember that, first of all, the district court is not in charge of determining whether that statement was true or not, but just whether sufficient circumstances suggesting its truthfulness to put the information before the jury, which was not done in that case. And in this case, there were those circumstances. Your Honor, one thing we need to remember is that the drugs in this case were found in hidden compartments of the car. And if you look, for example, at this court's precedent in the Pace and Aponte cases, this court found that without more, when all you've got is that the drugs are found kind of in these hidden compartments, an innocent, unknowing person in that context... There was more. Your client was in proximity to the tools that were likely used to remove the upholstery covers to place them. Your Honor, I'm glad you brought that up. So the tools were found in the vehicle. There was question as to whether my client knew they were there or not. One thing we talked about in the second point is the fact that three different officers in this case testified as experts, that those tools were commonly used in the drug industry in order to kind of tear apart, take apart seats and to hide and conceal drugs. Without that expert testimony, the jury would have had no way of knowing that, right? And in presenting that expert testimony, the prosecution acknowledged as much, that a common person, a common innocent person, and the good low case uses that kind of word, would have no way of knowing or thinking that these tools were anything suspicious at all. And there were three different experts in this case who testified, yeah, that does make this suspicious because that's something commonly used in the drug industry. But assuming that Mr. Alexander is not guilty, that he was just a common person, he would have no way of knowing that those tools were anything noteworthy. And if you look at the photos of, and as well as the video of this traffic stop, there was a ton of stuff in that car. A lot of it was in plastic bags, there was a cooler, there was all sorts of stuff around. And Mr. Alexander testified that, you know, it was primarily his co-defendant, who had been the person kind of driving the car all around. He was kind of- He was driving when they were pulled over. He was driving when they were pulled over. And his testimony was that, essentially, his co-defendant was tired, right? And he wanted to get home, which was consistent, frankly, with Trooper Ryan's testimony that he was pretending, the co-defendant was pretending to be or seemed to be asleep. So going back to the issue of corroborating circumstances, Your Honor, I think the fact that the drugs were found in hidden compartments, that the trooper who found them had to use an x-ray machine in order to find them. Your Honor, the other thing is that Mr. Gay was found with $8,000 on his person. He also turned over marijuana, which suggests, again, that Mr. Gay is guilty. Mr. Alexander was not found with anything suspicious on his person. And the last thing in terms of the corroborating circumstances of that, investigators actually looked into kind of the context of the larger statement that Mr. Gay had made and investigated it, and generally found that scenes of places he was and things like that, that they corroborated and were corroborated. So I think that can be evaluated in the context of the whole statement. Counsel, you're within your rebuttal. You can continue or- Your Honor, I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. Parrish. Welcome back, Mr. Wagner. Thank you, Your Honor, and may it please the Court. It's a little hard to know where to begin with this hearsay issue because Mr. Alexander's argument is in violent conflict with both the text of the rule and the way that courts have interpreted it. I want to start with the against penal interest prong of the rule. And I know it wasn't intentional, but Mr. Alexander has misquoted the rule this morning. The rule says, and I quote, that the statement must have had so great a tendency to expose the declarant to criminal liability. The word great there has to do some work in this rule. It's not just some tendency to expose the declarant to criminal liability. It has to be such a great tendency that a reasonable person wouldn't have said it unless it were true. And here, Mr. Gay's statements about it, Mr. Alexander's knowledge didn't come close. Mr. Gay said, in effect, and this was the offer of proof offered by his counsel, so I think for purposes of the appeal, we take it as true, that Mr. Alexander didn't know the drugs were in the car. The problem, though, is that Mr. Gay didn't say how he knew that. Mr. Alexander infers that he knew it because Mr. Gay knew the drugs were in the car. But that's not necessarily true. Mr. Gay could have known that because he had been with Alexander at all times while they were in possession of the rental car, and he hadn't seen Mr. Alexander put the drugs in the car, and he hadn't put the drugs in the car either. And that's why this Court's decisions in the cases that we've cited in our brief, in Dunn, in Thomas, which we cited in our 28-J letter, and in Ramsey, make the point that saying someone else didn't commit the crime is not necessarily inculpatory for the speaker. Now, of course, the Supreme Court pointed out in Williamson that we have to consider context as well. So what was the context here? It was the officers found the drugs in the car after they were found. I think it was after they were found, although the offer of proof wasn't entirely clear on this issue. Mr. Gay said Alexander didn't know they were there. That's not inculpatory at all for Mr. Gay. He could have known that because neither he nor Alexander knew that the drugs were in the car. Him, a defendant, an out-of-court... Wasn't his statement in the context of him going to try to get Mr. Alexander to, in essence, confess with him so that they could both get a deal? Yeah, that's an appropriate consideration for the corroborating circumstances requirement, particularly, Judge. The way it happened was, as I understand it, and from the motion papers that were filed in the order of proof, at the scene of the traffic stop, Mr. Gay said that they had gone to California, essentially, to go shopping. And he also said Mr. Alexander didn't know the drugs were in the car. He was later interviewed at the weigh station by another officer. And during that interview, he initially denied, essentially, that he had been involved in drug activity, essentially saying, as I recall, they had just gone to go shopping. But then eventually, he acknowledged that, yes, he was involved in transporting illicit substances and had done it before on a number of occasions. And in that context, he said again, but Mr. Alexander didn't know the drugs were in the car. At some point after that, the officers involved tried to arrange a controlled delivery. But for whatever reason, they were only willing to do it if both Mr. Gay and Mr. Alexander agreed to be involved. So they got together with Mr. Gay and Mr. Alexander, and Mr. Gay told Mr. Alexander that he had told the officers everything and essentially urged him to participate in the controlled delivery. But Mr. Alexander declined. So you've got a number of different stories from Gay. He is far from a reliable out-of-court declarant. And his statement that Mr. Alexander didn't know about the drugs, whether he made that statement in the context of admitting he knew about the drugs, if that's true, it didn't add any more to his criminal liability. He had already copped to it. Or if he just said it on its own, Mr. Alexander didn't know about the drugs, that doesn't tell us how Mr. Gay knew it. It just simply did not have what the rule requires, which is so great a tendency to expose Mr. Gay to criminal liability that he wouldn't have said it if it were not true. On the corroborating circumstances inquiry, Judge Shepherd, you're absolutely right. The focus is on the trustworthiness of the out-of-court statement. And how do we know that? Because of the 2010 advisory, the advisory committee notes to the 2010 amendments to Rule 804, which explain that, and I'm going to quote from the advisory committee notes because I think this is important. In assessing whether corroborating circumstances exist, some courts have focused on the credibility of the witness who relates the hearsay statement in court. But the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses. In other words, the focus of the corroborating circumstances inquiry is on the trustworthiness of the statement itself, whether there's reason, sufficient reason to believe that the statement is true. The focus is not, as Mr. Alexander is arguing, simply on whether the statement was made. If that were true, the judge would essentially be deciding whether the witness who comes into court and testifies to the statement is credible or not. But that's not the judge's role. That's the jury's role to determine whether the witness testifying in court is truthfully relaying the statement that was made outside of court. And that's why the advisory committee notes explain that that's not the focus of the inquiry. And that's borne out in this court's own precedent. Both parties cite the Rasmussen case, which essentially outlines five factors that this court considers when determining whether there are sufficient corroborating circumstances. And out of those five factors, only one focuses on whether the statement was made. That's the third factor, which is whether other people heard the out-of-court statement. The remaining factors focus properly on whether there's sufficient reason to believe the statement is true or trustworthy, as the rule itself, as the language in the rule itself states. So what were the corroborating circumstances in this case? Well, there weren't many. Gay, it's true. At the time of the stop, he said Alexander didn't know of the drugs. And he repeated that again when he was finally admitting that he had been involved in drug trafficking. But consider who Gay was. He was Alexander's longtime friend. Apparently, they weren't actually related, but they knew each other, had known each other for about the better part of 15 years. He was exactly the person who would have incentive to try to get his buddy off the hook by telling the officers something he thought would help his friend. He was also an untrustworthy person. Mr. Alexander has admitted that his absconding after pleading guilty detracts from his trustworthiness. And then the change of plea hearing. I think the parties have very different perspectives on what happened at Mr. Gay's change of plea hearing. Our position is that at the beginning of the hearing, the district court outlined the charges that Mr. Gay was going to plead guilty to. And in describing those charges, he said that Mr. Gay was charged with conspiring with Mr. Alexander and others to possess fentanyl with the intent to distribute it. He also said for the second count that Mr. Gay was charged with possessing the fentanyl with Alexander with the intent to distribute it. So the district court named both Mr. Gay and Mr. Alexander when describing the charges. And those were the charges that Mr. Gay said he understood and wished to plead guilty to. Is that how the counts of the indictment against Mr. Gay read? Did they include, they make reference to Mr. Alexander? Yes, they were charged in the same indictment, Your Honor. But did the counts charge Gay with conspiring with Alexander, for example? I do believe they did. I believe the district court was accurately summarizing the counts at the change of plea hearing. Of course, Mr. Alexander has argued that later in the hearing when Mr. Gay's counsel was establishing a factual basis for the plea, Mr. Alexander's name was not mentioned. But that doesn't really mean much of anything because the point of establishing a factual basis was to establish Mr. Gay's guilt of the crime. Mr. Alexander's involvement didn't play a role in it. So I don't think it cuts one way or the other that Mr. Alexander wasn't specifically mentioned by name during that part of the change of plea hearing. The other thing to consider here is that this question of whether statements are supported by corroborating circumstances that clearly indicate their trustworthiness, that's a factual question. That's a question that this court reviews for clear error. And the district court specifically found that that requirement was not met. And for the reasons stated in our brief, and as I've just stated, that finding was not clearly erroneous. I'd like to just touch very briefly on the constitutional question, whether excluding Mr. Gay's statements abridged Mr. Alexander's right to present a complete defense. The answer is, of course, in our view, no. And essentially what this boils down to is if the statements were not admissible under the hearsay rules, which provide exceptions for admitting out-of-court statements if they're admissible, that excluding them violated Mr. Alexander's right to present a complete defense. The standard is that the rule has to be so arbitrary or disproportionate to the purpose it's designed to serve. The hearsay rules don't even come close to meeting that standard. They have a number of exceptions for admitting out-of-court reliable statements. Mr. Gay's statement about Mr. Alexander simply didn't meet those requirements. And therefore, the district court properly excluded it. I'd like to turn to the expert issue, unless there are any other questions about the hearsay issue. And I just want to clear up a point for the record, which is this notion that while Mr. Gay had a large amount of cash in his possession, Mr. Alexander didn't have any cash. That's simply not true. Now, the officers didn't testify about Mr. Alexander having cash. But Mr. Alexander himself testified at trial that he had about $2,000 cash in his pocket at the time of the arrest. That's in volume three of the trial transcript on pages 469 through 70. So that issue came up in the briefs at a number of points. And I just wanted to be clear that the evidence at trial was that Mr. Alexander, as well as Mr. Gay, had a large amount of cash in his pocket. So with respect to this dual role question, this court's precedent is clear that law enforcement officers are permitted to testify both as fact witnesses and as expert witnesses based on specialized knowledge they've gained from training and experience. However, this court has also recognized that there can be some problems that arise when that testimony is intermingled and not sufficiently distinguished. But I think it's important to recognize that those concerns arose in cases involving interpretation of drug jargon on telephone calls. And there's a number of particular issues that can arise in that context when an expert is testifying about the meaning of words on telephone calls and the jury is unable to what they're saying they mean. In other words, does their knowledge come from hearsay that they've received in the case? And if the expert had interviewed witnesses in the case in a law enforcement capacity, that would, of course, be testimonial hearsay, which would raise a Crawford problem. Or did their opinion come from their experience with other cases in which case it would be based on their role as the expert? If those lines are not drawn in the context of interpreting code words on recorded telephone calls, there's a danger that the jury can't tell if this testimony comes from the witness's training and experience or from information they learned in the particular case. Those dangers were not nearly so stark in this case because here the law enforcement experts were testifying about what they saw, heard, and learned during the traffic stop in their lay capacity and also what they knew about those things in their expert capacity. And the context allowed the jury to distinguish between the two capacities in which they were testifying. The jury could tell if they were saying, I saw tools in the trunk of the car, which would be lay testimony. And the jury could tell if they said, and in my training and experience, I know that those sorts of tools can be used to access voids in the car to hide drugs. The jury was easily able to distinguish between those two sorts of testimony in this particular case. And of course, this issue was never raised at trial. This is up on plain error review. And the question is, in this context, which is distinct from the context that this court has dealt with previously, was it plainly erroneous for the district court not to step in sua sponte and require a more definite distinction between the expert testimony and the lay testimony? The answer, I think, is no. That issue was not so clear that the district court had an obligation to step in sua sponte. The other thing is because- Was there specific testimony by the officers that was objected to as somehow improper? Yes. For example, one of the officers began to testify about how, in his opinion, Mr. Alexander's nervousness was indicative of more than just nervousness during a traffic stop and was indicative of- I think he was beginning to say, essentially, that it was indicative of somebody involved in crimes beyond the traffic stop. And Mr. Alexander's counsel objected to that testimony. And the district court sustained that objection. And that testimony didn't go any further because it was obviously, I think, properly sustained as speculative. So Mr. Alexander's lawyer was not shy in objecting to testimony that he viewed as improper. And the district court considered the objections as they arose. And I don't think there's any issue on appeal about objections that the district court did rule on. It's just these objections that were never made were never objected to. Any more distinction between the expert and lay testimony just wouldn't have changed the outcome of the trial. So it wouldn't be a proper basis to reverse unplanned error review. Unless there are further questions, the government would ask the court to affirm. Thank you, Mr. Wagner. Your Honor, so I want to address a couple of things that were brought up in the responsive argument, as well as by this court previously in questioning. So first, he mentioned that the language of the rule requires so great a tendency to expose the person to criminal liability that a reasonable person would not have said it. And I agree, Your Honor, that is the language of the rule. What was said here was not, Mr. Alexander and I don't know anything about that. I don't know anything about that. He did not say he didn't know anything about it. All he said was that Mr. Alexander did not know anything about it. And the only way to read that statement is that he did know something. And it doesn't really make sense that somehow they had some other conversation about this, or that he gained the knowledge in some other way. And I ask the court to turn this around. There's some discussion in some of the case law about looking at whether the statement is something the prosecutor would have likely put in in a case in chief against the person who made the statement. And I think if we were looking at a trial, for example, against Mr. Gay, that's certainly a statement that would be admissible as something indicating that he had knowledge of the drugs and should be subject to criminal liability. The other thing I want to address, Your Honor, Judge Smith, you asked the question about the fact that Mr. Gay fled, and how that reflects on his character in terms of analyzing the Rasmussen character, the Rasmussen factors. And Your Honor, I think if we look at the One Star case, certainly the idea that he fled, that he was guilty of a crime, doesn't reflect well on his character. But courts all the time affirm cases based on the testimony of cooperating witnesses who have plenty of criminal history. And in One Star, Your Honor, this court found that the statements were admissible when the person who had made the statements had admitted to a murder. So certainly, I don't think that character issue is dispositive here. Thank you, Your Honors. Thank you, Ms. Parrish. And the court notes that you have represented Mr. Alexander under the Criminal Justice Act, and we thank you for your service on the panel. All right. Thank you, counsel. We will take the case under advisement and render a decision in due course.